## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

Jacqueline Jones, *on behalf of herself*
*and others similarly situated*,

        Plaintiff,

vs.                              Case No. 1:14-cv-00130-PJK-RHS

I.Q. Data International, Inc.

        Defendant.

### PLAINTIFF'S UNOPPOSED MOTION TO FINALLY APPROVE THE PARTIES' CLASS ACTION SETTLEMENT

### Introduction

As a result of the class action settlement that Jaqueline Jones and I.Q. Data International, Inc. ("IQ") negotiated, each of the 5,508 class members who submitted a valid claim form in connection with this matter will receive approximately $103. Not a single class member objected to the settlement. And only three class members timely excluded themselves from it.

Given this very significant result, Ms. Jones now asks this Court to finally approve the settlement, and accordingly enter a final judgment and order. In support of her request, Ms. Jones notes that (1) the settlement was fairly and honestly negotiated; (2) serious questions of law and fact exist, which placed the ultimate outcome of this matter in doubt; (3) the value of the settlement outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) counsel for Ms. Jones and IQ believe that the settlement is fair and reasonable.

### Post-Settlement Procedure

Months ago, Ms. Jones and IQ asked this Court to preliminarily approve their settlement, the material terms of which they outlined as follows:

> Defendant will establish, or have established on its behalf, a settlement fund
> in the amount of $1,000,000 to settle the *Jones* action in its entirety and to

obtain a release of the Released Claims in favor of Defendant as set forth herein. The settlement fund will be used to pay for approved claims, costs, expenses and fees of any kind, and any and all administration fees and costs.

\*      \*      \*

Each Class Member who submits a single, valid claim form, which provides the Class Member's name, address, and telephone number, either online or by U.S. Mail with a postmark of no later than seventy-five days after the Preliminary Approval Date, will be entitled to a pro rata share of the settlement fund as it exists after deducting:

a.  Costs and expenses of administrating the class action settlement;

b.  Class Counsel's attorneys' fees in an amount not to exceed thirty-percent of the settlement fund, subject to the court's approval;

c.  Class Counsel's costs and expenses not to exceed $25,000, subject to the court's approval; and

d.  Plaintiff's incentive award, not to exceed $20,000, subject to the court's approval;

e.  Each Settlement check will be negotiable for ninety days after it is issued. Any funds not paid out as the result of uncashed settlement checks will be paid out as a *cy pres* award, to a recipient agreed to by the parties and approved by the court.

Doc. 53-1, ¶¶ 4.1-4.3

This Court subsequently entered an order preliminarily approving the settlement, and directing distribution of the related notice. *See* Doc. 59. Thereafter, The ILYM Group, Inc. ("ILYM") distributed notice of the class action settlement to more than 90,000 members of the class. *See* Declaration of Lisa Mullins, ¶¶ 4-9, attached as Exhibit A. ILYM also established a dedicated website to provide class members easy and immediate access to information regarding the settlement, and to allow class members to electronically submit claims forms. *See id.*, ¶ 10. ILYM received just over 5,512 responses to the notice it issued, including 5,508 claims forms, and

three timely opt-out requests. *See id.* Not a single class member objected to the class action settlement. *Id.*, ¶¶ 11-13.

### Final Settlement Breakdown

After deducting from the $1 million settlement fund the costs and expenses of administrating the class action settlement, any attorneys' fees, costs, and expenses this Court awards to Ms. Jones's counsel, and any incentive award this Court approves to Ms. Jones, each of the 5,508 claimants will receive approximately $103—an amount that not only compares quite well with, but exceeds, the amount that claimants received in several recently approved, high-profile Telephone Consumer Protection Act ("TCPA") class actions.

### Argument

**I.   The class action settlement is fair, reasonable, and adequate, and should be approved.**

A district court "must approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). "In assessing whether the settlement is fair, reasonable and adequate the trial court should consider: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.*

**A.   The settlement was fairly and honestly negotiated.**

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (8th ed. 2011); *see also Sandoval v. Tharaldson Emp.Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the

settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. CIV.A. 08-4149 (JLL), 2009 WL 3345762 (D.N.J. Sept. 10, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."), *as amended* (Sept. 14, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011); *accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."); *Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2013 WL 1010384, at *36 (D.N.M. Feb. 27, 2013) ("The Court has previously determined arms-length negotiations absent any allegations of collusion demonstrate that a class action settlement was fairly and honestly negotiated."); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable.").

Here, Ms. Jones and IQ resolved this matter only after participating in two separate all-day mediation sessions before the Hon. Leo S. Papas (Ret.).[1] The first mediation session occurred on November 18, 2014, and the second mediation session occurred on January 14, 2015. Judge Papas

---

[1]      "Judge Papas was appointed a Federal Magistrate Judge for the Southern District of California in 1991. During his time on the bench, he mediated more than 3,800 cases ranging from simple to multi-issue complex matters with national implications. . . . It was in August of 2009, after 18 years of distinguished service that Judge Papas made the transition to his encore career as a private mediator with Judicate West. Within his very first year in the private sector, Judge Papas was selected by the Daily Journal as a Top 50 Neutral, a rare and distinguished accomplishment, and he has maintained this status ever since. As a private mediator he has handled well over 1,000 additional cases including in excess of 100 class action and multi-party complex matters and over 200 employment related disputes." http://www.judicatewest.com/neutral/255.

remained involved in settlement discussions during the time between the first and second mediations, and his assistance proved valuable in reaching the settlement now before this Court.

### B. Serious questions of law and fact exist, which placed the ultimate outcome of this matter in doubt.

The TCPA, 47 U.S.C. § 227, makes it unlawful for "any person . . . to make any call . . . other than a call made for emergency purposes or made with the prior express consent of the called party . . . using any automatic telephone dialing system . . . to any telephone number assigned to . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). It also permits a plaintiff to bring an action to recover actual or statutory damages. 47 U.S.C. § 227(b)(3).

Though her class action complaint, Ms. Jones alleged that IQ violated the TCPA by using an automatic telephone dialing system ("ATDS"), to place calls to her cellular telephone, without prior express consent. *See* Doc. 1, ¶ 53. She also sought to represent a class of similarly situated individuals. *See id.*, ¶ 28.

Through its answer, IQ denied Ms. Jones's allegations, denied that it violated the TCPA, and asserted eighteen affirmative defenses to Ms. Jones's claims. *See generally* Doc. 8. As this matter progressed, IQ focused its efforts on several of these defenses.

For example, IQ spent considerable time arguing that it had prior express consent to contact the overwhelming majority of cellular telephone numbers to which it placed, or caused to be placed, calls, by using an ATDS. In support of its position, IQ took steps to demonstrate that it had an established policy designed to prevent it from using an ATDS to place calls to cellular telephone numbers for which it did not have prior express consent to contact. According to IQ, this protocol did not fail at any point throughout the relevant class period.

Moreover, IQ asserted that Ms. Jones's proposed class was unverifiable. Specifically, IQ contended that this Court would have to engage in individualized fact-finding to determine (1)

which of the calls at issue reached cellular telephones, as opposed to residential lines, (2) which of the recipients did not give IQ prior express consent to contact them by using an ATDS, and (3) of the recipients that gave IQ prior express consent to contact them by using an ATDS, which of them effectively revoked consent.

These concerns, individually and taken as whole, placed the ultimate outcome of this matter in doubt.

### C. The value of the settlement outweighs the mere possibility of future relief after protracted and expensive litigation.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." NEWBERG ON CLASS ACTIONS, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial. . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

There is, of course, an "overriding Public interested in settling class action litigation, especially where substantial judicial resources can be conserved by avoiding formal litigation[.]" *Lane v. Page*, 862 F. Supp. 2d 1182, 1248 (D.N.M. 2012) (internal quotation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943,

950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits . . . .").

Here, the settlement requires that IQ establish a settlement fund in the amount of $1 million. Out of the settlement fund IQ will pay: (1) damages to Ms. Jones and the class members; (2) the costs and expenses of administrating the settlement; (3) an award of attorneys' fees to Ms. Jones's counsel, subject to this Court's approval; (4) costs and expenses that Ms. Jones and her counsel incurred litigating this matter, subject to this Court's approval; and (5) an incentive award to Ms. Jones, subject to this Court's approval. *See* Doc. 53-1 at 7, Section 4.1-4.3. This means that each of the 5,508 class members who submitted claim forms will receive approximately $103.[2]

Significantly, this figure compares very favorably with class action settlements that courts have finally approved in similar, if not nearly identical, TCPA class actions. *See, e.g.*, *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ("because only a fraction of class members filed a claim, as is often the case in consumer class actions, the 1,378,534 timely claimants will receive at least $34.60 each"), *appeal dismissed* (May 5, 2015), *appeal dismissed* (June 8, 2015), *appeal dismissed* (June 26, 2015); *Adams v. Allianceone Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Docs. 116, 137 (S.D. Cal.) ($40.00 per claimant); *Connor v. JPMorgan Chase Bank*, No. 10-cv-1284-DMS-BGS, Docs. 55, 122-1, 160 (S.D. Cal.) ($66.97 per group 1 claimant, and $70.12 per group 2 claimant); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN NLS, Doc. 96 (S.D. Cal.) ("The Claims Administrator shall pay each of the

---

[2]     [$1,000,000 (total settlement fund)] – [$98,120.59 (costs and expenses of administrating the class action settlement) + $20,000 (maximum incentive award to Ms. Jones) + $300,000 (proposed attorneys' fee award to Ms. Jones's counsel) + $13,665.01 (proposed cost and expense award to Ms. Jones and her counsel)] / [5,508 (number of class members that submitted claims forms)] = $103.16

120,547 claimants that made a timely and valid claims as well as the 153 claimants that made a late claim, the sum of $84.78").

Worth mentioning, the approximately $103 per claimant recovery is particularly substantial given not only that IQ's relevant insurance policy limit is capped at $2 million, but also that IQ's relevant insurance policy is eroding—meaning every dollar that IQ's counsel billed to defend this matter was a dollar less that could have been recovered for the class. Also important, IQ states that its net worth is very minimal, if not *de minimis*.

In any event, "[i]t has been held proper 'to take the bird in the hand instead of a prospective flock in the bush.'" *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974). And "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Lane*, 862 F. Supp. 2d at 1249. So given the serious questions of law and fact that exist, placing the ultimate outcome of this matter in doubt, *see supra*, and considering the amount of potentially recoverable money at stake, the value of the class action settlement—which exceeds, on a per-claimant basis, the value of many recent TCPA class action settlements that courts have finally approved—outweighs the mere possibility of future relief after protracted and expensive litigation, and thus further supports its approval.

**D.  Counsel for Ms. Jones and IQ believe that the settlement is fair and reasonable.**

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lane*, 862 F. Supp. 2d at 1249; *see also Lowery*, 2013 WL 1010384, at *39 ("The Court has previously determined that the opinion of experienced counsel that a settlement is fair is of great weight to the Court's decision to approve a settlement."); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988) (explaining that a court should afford great weight to the recommendation of counsel who are most closely acquainted with the facts of the respective

litigation); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 313 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. 'The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'").

Here, Ms. Jones's counsel—who have significant experience litigating consumer protection class actions throughout the country—aver that the class action settlement was the product of investigation, litigation, and arm's length negotiation, and is fair, reasonable, and adequate with respect to the class members.[3] *See* Declaration of Aaron D. Radbil, ¶ 35, attached as Exhibit B. IQ's counsel agrees.

## II. The nearly universally favorable reaction to the class action settlement supports its approval.

Of the more than 90,000 class members to which ILYM distributed notice, only three timely excluded themselves from the class action settlement, and not a single class member objected to it. *See* Exhibit A, ¶¶ 11, 14, 16. This overwhelmingly favorable reaction to the settlement supports its approval. *See Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *4 (D. Colo. Apr. 22, 2015) ("[N]ot a single person objected to the Settlement, and only one class member excluded himself from it. This is a strong indication that the Settlement is fair, reasonable, and adequate."); *see also Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324

---

[3]     Ms. Jones's counsel have been appointed class counsel in over a dozen federal class actions over the past two years. *See, e.g.*, *Lambeth v. Advantage Fin. Servs., LLC*, No. 1:15-cv-33-BLW, 2015 WL 4624008 (D. Idaho Aug. 3, 2015); *Prater v. Medicredit, Inc.*, No. 4:14-cv-00159, 2015 WL 4385682, at *1 (E.D. Mo. July 13, 2015); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 661 (M.D. Fla. 2015); *Gonzalez*, 2015 WL 738329, at *2; *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-00142, 2015 WL 223764, at *2 (S.D. Ohio Jan. 16, 2015); *Donnelly v. EquityExperts.org, LLC*, No. 13-10017, 2015 WL 249522, at *2 (E.D. Mich. Jan. 14, 2015); *Ritchie v. Van Ru Credit Corp.*, No. 2:12–CV–01714–PHX–SM, 2014 WL 3955268, at *2 (D. Ariz. Aug. 13, 2014); *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 671 (S.D. Fla. Jan. 16, 2014).

AWI SKO, 2012 WL 5364575, at *6 (E.D. Cal. Oct. 31, 2012) ("The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."); *Williams v. Costco Wholesale Corp.*, No. 02CV2003 IEG(AJB), 2010 WL 2721452, at *5 (S.D. Cal. July 7, 2010) ("The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Brotherton v. Cleveland*, 141 F. Supp. 894,906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *accord Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002) ("We conclude that the district court did not abuse its discretion in determining that the settlement, from which an extremely small percentage of class members opted out, was fair, reasonable and adequate . . . .").

### III. Distribution of notice of the class action settlement satisfied due process requirements.

Due process "does not require *actual* notice to each party intended to be bound by the adjudication of a representative action." *DeJulius v. New England Health Care Emps. Pension Fund,* 429 F.3d 935, 944 (10th Cir. 2005) (emphasis in original). Rather, "procedural and due process rights are satisfied by 'the best notice practicable under the circumstances including

individual notice to all members who can be identified through reasonable effort.'" *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (quoting *Eisen*, 417 U.S. at 173)).

If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means. "[N]otice by publication is only used when the identity and location of class members cannot be determined through reasonable efforts . . . ." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069 SBA, 2008 WL 1990806, at \*2 (N.D. Cal. May 5, 2008).

Here, ILYM used all reasonable efforts to provide direct mail notice to each member of the class. *See* Exhibit A, ¶¶ 4-10. This resulted in a claims rate of just under 6%, which compares favorably with claims rates associated with other finally approved TCPA class action settlements. *See, e.g.*, *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at \*5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at \*3 (N.D. Ill. Feb. 27, 2015) ("3.16% of the class[] filed a timely claim"); *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-CV-638, 2014 WL 497031, at \*4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Arthur v. SLM Corp.*, No. C10–0198 JLR (W.D.Wash. Aug. 8, 2012), Docket No. 249 at 2–3 (claims rate of approximately 2%); *Grannan v. Alliant Law Group, P.C.*, 2012 WL 216522, at \*3 (N.D. Cal. Jan. 24, 2012) (claims rate under 3%).

## Conclusion

Ms. Jones respectfully requests that this Court finally approve the parties' class action settlement, and accordingly enter a final judgement and order.

Respectfully Submitted,

/s/ Aaron D. Radbil
Aaron D. Radbil (*pro hac vice*)
Greenwald Davidson PLLC
106 East Sixth Street, Suite 913
Austin, Texas 78701
Phone: (512) 322-3912
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

Michael L. Greenwald (*pro hac vice*)
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Phone: (561) 826-5477
Fax: (561) 961-5684
mgreenwald@gdrlawfirm.com

Anita M. Kelley
Law Office of Anita M. Kelley
913-A Fifth Street NW
Albuquerque NM 87102
(505) 750-0265

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed via the Court's CM/ECF

system on September 2, 2015, which will provide a copy to all counsel of record.

/s/ Michael L. Greenwald
Michael L. Greenwald